UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRIAN D. HORNE,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )        No. 2:19-CV-013-DCP
                                         )
ANDREW M. SAUL,[1]                       )
Acting Commissioner of Social Security,  )
                                         )
            Defendant.                   )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 10].

Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and

Memorandum in Support [Docs. 19 & 20] and Defendant's Motion for Summary Judgment and

Memorandum in Support [Docs. 23 & 24]. Brian D. Horne ("Plaintiff") seeks judicial review of

the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew

M. Saul ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's

motion and **GRANT** the Commissioner's motion.

## I.   PROCEDURAL HISTORY

Plaintiff initially filed an application for disability insurance benefits on January 25, 2012

[Tr. 192–98], as well as an application supplemental security income benefits on February 2, 2012

[Tr. 199–205], pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

and 1381 *et seq.* After his applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 132–33]. Hearings were held on May 17, 2013, and October 31, 2013. [Tr. 33–58]. On November 14, 2013, the ALJ found that Plaintiff was not disabled. [Tr. 13–32]. The Appeals Council denied Plaintiff's request for review on March 13, 2015 [Tr. 1–5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on February 18, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. *See Horne v. Comm'r of Soc. Sec. Admin.*, No. 2:15-cv-048-RLJ-HBG, Doc. 2. On December 21, 2015, this Court remanded Plaintiff's case for further consideration of his need to alternate between sitting and standing based upon the medical record. *Horne*, No. 2:15-cv-048, Doc. 21.

While Plaintiff's previous appeal was pending, he filed new claims under Titles II and XVI on February 27, 2015 and March 26, 2015. [Tr. 626–28]. After Plaintiff's subsequent application was denied at the initial and reconsideration levels [Tr. 534–35, 566–67], and following the Court's remand order [Tr. 570–88], the Appeals Council consolidated Plaintiff's claims [Tr. 589–92]. The ALJ held a hearing on January 27, 2017 [Tr. 464–78], and on June 26, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 439–55]. The Appeals Council declined to assume jurisdiction over Plaintiff's appeal on November 30, 2018 [Tr. 430–35], making the ALJ's decision the final decision of the Commissioner.

Plaintiff then filed a Complaint with this Court on January 28, 2019, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2.  The claimant has not engaged in substantial gainful activity since August 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease and morbid obesity (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 10 pounds frequently and 20 pounds infrequently, walk for at least two hours in an eight hour workday; sit six hours in an eight hour workday; he would need an opportunity to change positions every 20 to 30 minutes; and he is limited in his ability to bend (stoop), twist, and kneel, and he is unable to climb ladders.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on September 11, 1969 and was 41 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 442–55].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the

Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.     DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5.  Even if claimant's impairment does prevent him from doing his
> past relevant work, if other work exists in the national economy that
> accommodates his residual functional capacity ("RFC") and
> vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

"based on all the relevant medical and other evidence in your case record."   20 C.F.R. §§

404.1520(a)(4) and -(e), 416.920(a)(4), -(e).   An RFC is the most a claimant can do despite his

limitations.  20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps.  *Walters*, 127 F.3d at 529.

The burden shifts to the Commissioner at step five.  *Id.*  At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform.  *Her*

*v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V.    ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence

in several regards.  First, Plaintiff maintains that "[t]he ALJ failed to properly consider [his] need

to withdraw from the work setting more than one time per day due to excessive pain" [Doc. 20 at

3, 7–8].   Next, Plaintiff alleges that there is not substantial evidence to support the ALJ's RFC

determination that his upper extremities had normal strength, and that the ALJ thus erred by failing

to include a limitation on his ability to lift above shoulder level in the RFC.  [*Id.* at 8–9].  Further,

Plaintiff claims that the ALJ erred by failing to order a mental health consultative examination,

did not appropriately consider his need for a service animal, and improperly found that his

depression and anxiety were not severe impairments.  [*Id.* at 9–11].  Lastly, Plaintiff asserts that

the ALJ improperly failed to provide his March 17, 2012 MRI to consultative examiner, Jeffrey Uzzle, M.D., for his review. [*Id.* at 11].

### A.    ALJ's Step Two Determination

Plaintiff asserts that the ALJ improperly found that his depression and anxiety were not severe impairments during step two of the disability determination. Plaintiff points to the medical opinion of nonexamining state agency consultant, Thomas Neilson, Psy.D., who reviewed the evidence of record at the initial level of the agency's review of his first application for disability benefits on April 11, 2012. [Tr. 83]. Plaintiff asserts that Dr. Neilson assessed that Plaintiff had moderate limitations in seven areas of functioning, including dealing with changes in the work setting; the ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes; the ability to handle criticism from supervisors; and the ability to complete a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [Doc. 20 at 10 (citing [Tr. 82]).

At step two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. §§ 404.1508; 416.920(a)(4)(ii); 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508; 416.908. Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. Lastly, "[i]f an alleged impairment is not

medically determinable, an ALJ need not consider that impairment in assessing the RFC." *See Jones v. Comm'r of Soc. Sec.*, No. 3:15-CV-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017) (internal citations omitted).

Additionally, to be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a de minimis hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).

In the disability determination, the ALJ found that Plaintiff's "medically determinable mental impairments of depression and anxiety . . . do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." [Tr. 445]. First, the Court notes that the ALJ reviewed Plaintiff's mental health treatment and medical history in great detail, spanning from when Plaintiff first sought mental health treatment on August 12, 2011, [Tr. 443] through his continued monthly therapy in September and October of 2016 [Tr. 445]. The ALJ reviewed that Plaintiff presented for a consultative psychological examination on March 27, 2012, with Roy Nevils, Ph.D., who diagnosed anxiety disorder and depressive disorder, but opined that Plaintiff "could have some mild problems with memory and concentration, but there were no limitations seen with respect to adaptability due to mental disorder." [Tr. 443]; *see* [Tr. 281]. Further, the ALJ detailed that Plaintiff reported much improvement after beginning taking Pristiq in July of 2013, and that he denied depression, sadness, crying spells and he did not

endorse panic attacks or anxiety. [Tr. 443–444]; *see* [Tr. 390]. The ALJ reviewed normal mental status examinations in November of 2014, and May of 2015, while also detailing Plaintiff's treatment and response to additional stressors. [Tr. 444]. Further, the ALJ cited to an August 14, 2015 treatment note in which Plaintiff's depression was reported as stable, with his medication working. [*Id.*]; *see* [Tr. 832].

Next, the ALJ "considered [Plaintiff's] psychotherapy records, which largely document the claimant's statements concerning his symptoms, financial difficulties, and physical concerns," although Plaintiff "related well with the therapist, and his presentations were not consistent with statements to medication providers." [Tr. 444].

The ALJ then found that Plaintiff had mild limitations in understanding, remembering, or applying information, largely due to treatment records documenting intact memory abilities and active participation in treatment discussions, as well as consultative examination findings. [Tr. 445]. Additionally, the ALJ found that Plaintiff had mild limitation in social interaction, reviewing that Plaintiff was involved in a romantic relationship and lives with another individual, was noted as calm and cooperative, and that Dr. Nevils noted that Plaintiff reported a mild interpersonal relationship disturbance. [*Id.*]. Further, the ALJ found that Plaintiff had only mild limitation in concentrating, persisting, or maintaining pace after reviewing Dr. Nevils' examination findings. [*Id.*]. Lastly, the ALJ found that Plaintiff had mild limitation in adaption due to his reported daily activities, and treatment records indicating that he generally presented with good hygiene and appropriately dressed, with good judgment and insight. [Tr. 446].

Plaintiff does not contest the remaining evidence relied upon by the ALJ in step two of the disability determination, and solely claims that the ALJ improperly found mild limitation in each area of his mental functioning, in contrast to Dr. Neilson's opinion. However, the Court finds that

the ALJ appropriately reviewed Plaintiff's treatment records and other opinions of record to find that he had no more than mild limitation in each of the paragraph B criteria set forth for evaluating mental impairments—understanding, remembering, or applying information, social interaction, concentrating, persisting, or maintaining pace, and adaption.

Further, it is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

Here, in the RFC determination the ALJ granted great weight to Dr. Nevils' opinion, finding that it was "consistent with treatment records, which often indicate normal mental status examinations and positive response to medications." [Tr. 451]. Moreover, the ALJ assigned little weight to the opinions of the nonexamining state agency consultants who reviewed the evidence of record during Plaintiff's initial application, including Dr. Neilson, as they were not consistent with the medical record, including Dr. Nevils' opinion after his examination. [*Id.*]. The ALJ assigned great weight to the opinions of the state agency psychological consultants provided in connection with Plaintiff's subsequent application, who found that Plaintiff did not have a severe mental impairment. [Tr. 451].

Therefore, the Court finds that the ALJ's finding that Plaintiff's depression and anxiety were not severe mental impairments is supported by substantial evidence, as the ALJ reviewed the record with respect to Plaintiff's mental health treatment at length and detailed why he found no more than mild limitations. Further, the ALJ reviewed the medical opinions regarding Plaintiff's depression and anxiety in the RFC determination, and detailed why Dr. Neilson's opinion—which Plaintiff relied upon—was entitled to little weight.

### B.    ALJ's RFC Determination

### 1.    Need to Lie Down

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to consider his need to "withdraw from the work setting more than one time per day due to excessive pain." [Doc. 20 at 7]. Plaintiff claims that this limitation is supported by his testimony, the October 24, 2013 opinion of William E. Kennedy, M.D., who opined that he would have to withdraw from work two or more times a day [Tr. 429], the April 9, 2012 consultative examination with Robert Blaine, M.D., after which Dr. Blaine opined that Plaintiff could not stand or walk for more than thirty to forty-five minutes in a workday and would require "frequent" rest breaks and change of position [Tr. 285], and the May 1, 2013 independent medical evaluation of Steven Baumrucker, M.D., who opined that Plaintiff would need to lie down frequently during a normal work day [Tr. 346].

The Commissioner responds that the ALJ "specifically considered Plaintiff's assertion that he needed to lie down about five or six hours a day but found this assertion not entirely consistent with the evidence in the record." [Doc. 24 at 18]. Additionally, the Commissioner contends that the ALJ reviewed Plaintiff's treatment records for his back pain and spinal tenderness, and identified other inconsistencies in the medical record. [*Id.* at 18–20].

The ALJ included the need for an opportunity to change position every twenty to thirty minutes in Plaintiff's RFC. [Tr. 446]. However, Plaintiff challenges the failure to include a limitation for the need to withdraw from work more than once per day, as well as the need to lie down frequently.

In the disability decision, the ALJ first addressed Plaintiff's allegations of back pain, finding that his treatment "has been generally routine and conservative in nature, and the evidence is not supportive of his allegations." [Tr. 447]. The ALJ reviewed Plaintiff's treatment for his back pain from September 2011 through his consultative examination with Dr. Uzzle on March 17, 2017. [Tr. 447–50]. For example, the ALJ discussed that a March 15, 2012 examination revealed a normal range of motion, muscle strength, and stability in all extremities with no pain on inspection [Tr. 291]; as well as that a March 17, 2012 MRI "revealed a focal annular fissure posterolaterally on the right at L5-S1, and a small disc protrusion," further examinations revealed mild to moderate pain, and Plaintiff's primary care providers prescribed non-steroid anti-inflammatory drugs. [Tr. 447–48]; *see* [Tr. 418].

The ALJ then reviewed Plaintiff's examination with Dr. Blaine on April 9, 2012 [Tr. 283–85] and complaints of worsening back pain in October of 2012. [Tr. 448]. However, the ALJ cited to treatment notes in 2013 revealing moderate pain with motion and tenderness in the lumbar spine, without sensory loss. [*Id.*]; *see* [Tr. 336, 418, 779]. The ALJ detailed Dr. Baumrucker's independent medical examination on May 1, 2013, "where the doctor observed the claimant's antalgic gait apparently favored the left side, which was opposite of Dr. Blaine's observations." [Tr. 448]; *see* [Tr. 344–46]. The ALJ further summarized Dr. Baumrucker's examination as revealing "decreased range of motion of the thoracic and lumbar spine, as well as tenderness over the lumbar paraspinal muscles with guarding and spasm." [*Id.*].

Therefore, the ALJ found that "[r]ecords that follow indicate the claimant received conservative treatment through his primary care provider, and his examinations remained essentially unchanged . . . [and] often revealed tenderness and mild to moderate pain with motion, but no sensory loss was indicated, and deep tendon reflexes were preserved and symmetric." [Tr. 448]. The ALJ reviewed Plaintiff's examination with Dr. Kennedy on October 24, 2013, where Plaintiff stood with a normal posture and walked through the office slowly and carefully without evidence of a limp, and "[e]xamination revealed decreased range of motion of the lumbar spine, muscle spasm, as well as an inconsistent straight leg raise test." [Tr. 449].

Next, the ALJ reviewed Plaintiff's emergency treatment on September 9, 2014, for neck pain, and imaging revealed degenerative changes, which were most pronounced at C6-C7 [Tr. 740–48], and that "subsequent records continue to report some limitations in range of motion with mild to moderate pain." [Tr. 449]. The ALJ detailed that after a gap in treatment, Plaintiff presented to his primary care provider on November 23, 2015, with complaints of back pain, which began two weeks ago and radiated to the bilateral legs. [*Id.*]; *see* [Tr. 875]. On examination, Plaintiff's cervical spine was tender, with pain on range of motion and lumbar spine tenderness and a normal gait [Tr. 879], and Plaintiff was prescribed narcotic pain medication. [Tr. 449]. The ALJ then stated that Plaintiff's next visit on April 1, 2016, included examination findings of "mild pain with range of motion of the lumbar spine, but the claimant demonstrated normal pain free range of motion of the cervical spine." [*Id.*]; *see* [Tr. 884–91].

Moreover, the ALJ reviewed Plaintiff's consultative examination with Dr. Uzzle on March 17, 2017, where Dr. Uzzle "reviewed updated imaging, which revealed mild to moderate multiple level degenerative disc changes in the thoracic spine, as well as moderate multiple level degenerative disc changes in the lumbar spine." [Tr. 449]. Further, Dr. Uzzle reported that

Plaintiff has never had any type of surgery, and the ALJ detailed that Dr. Uzzle noted that Plaintiff was not a good historian, and "[r]ange of motion testing was limited, but [Dr. Uzzle] noted obvious inconsistencies in the formal versus informal range of motion observations of the spine and extremities." [Tr. 449–50]; *see* [Tr. 944–45].

With respect to the relevant opinion evidence discussed above, the ALJ assigned partial weight to Dr. Uzzle's opinion, as Dr. Uzzle did not explain his reasoning for limitations involving the frequent use of Plaintiff's hands or feet or environmental limitations. [Tr. 452]. Additionally, the ALJ found that Plaintiff was unable to perform the lifting and carrying requirements specified by Dr. Uzzle due to Plaintiff's subjective complaints of pain and limitations in range of motion. [*Id.*].

The ALJ also assigned little weight to Dr. Blaine's opinion, because it was inconsistent with the objective findings in the medical record and was vague in nature, as Dr. Blaine failed to specify the frequency of rest breaks and change of positions needed. [*Id.*]. The ALJ detailed that the opinion was inconsistent with subsequent treatment records which indicated fair control of Plaintiff's pain, as well as Dr. Uzzle's observations. [*Id.*]. Similarly, the ALJ noted that Dr. Baumrucker's opinion included an opinion that there was no job that Plaintiff could perform—an opinion on a matter reserved to the Commissioner, as well as that the opinion was vague and provided "little insight" on Plaintiff's functioning. [*Id.*]. The ALJ found that the opinion was largely based on Plaintiff's subjective complaints and inconsistent with the observations of Plaintiff's treating providers and objective findings. [*Id.*].

Lastly, the ALJ found that Dr. Kennedy's opinion was entitled to little weight, as Plaintiff did not undergo the examination in an attempt to seek treatment, and his presentation to Dr. Kennedy was "inconsistent with his presentations to treatment providers, who largely noted intact

sensation, as well as presentation to another examiner, who noted a different gait pattern, both of which could affect Dr. Kennedy's opinion." [Tr. 453]. However, the ALJ found that certain aspects of the opinion were consistent with the RFC determination. [*Id.*].

The RFC is the most an individual can do despite her limitations. 20 C.F.R. § 416.945(a)(1). When determining a claimant's RFC and the corresponding hypothetical, the ALJ need only include those limitations found to be "credible" and supported by the record. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). The ALJ alone is tasked with the responsibility of assessing a claimant's RFC. 20 C.F.R. § 416.1546(c). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Accordingly, the "ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Id.* However, "the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011). Although the ALJ retains a "zone of choice," she must explain why she did not include limitations assessed in contradicting medical opinions. *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x. 637, 649 (6th Cir. 2013).

Ultimately, the Court concludes that the ALJ's finding that "the evidence of record is not supportive of [Plaintiff's] allegations of . . . the requirement of at least five to six hours of laying down daily due to pain" is supported by substantial evidence. [Tr. 450]. After extensively reviewing the medical record with respect to Plaintiff's back pain, the ALJ found that Plaintiff has received largely conservative treatment and reported that his pain was fairly controlled. [*Id.*]. *See*

20 C.F.R. § 404.1529(c)(3)(v) (listing treatment a claimant has received for their pain or other symptoms as a relevant factor to be weighed in considering the severity of a claimant's symptoms); *see, e.g.*, *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (holding that the plaintiff's limited treatment was inconsistent with a finding of total disability); *Robertson v. Colvin*, No. 4:14-cv-35, 2015 WL 5022145, at *5 (E.D. Tenn. Aug. 24, 2014) (finding the ALJ properly discounted Plaintiff's subjective complaints because "the ALJ also considered that Plaintiff received routine, conservative care for his impairments") *(citing *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014)).  The ALJ noted how Plaintiff reported his pain being fairly controlled with medication, as well as detailed numerous treatment records where Plaintiff noted only mild to moderate complaints of pain.  Further, the ALJ reviewed several examination findings during the claimed period of disability where Plaintiff exhibited a normal range of motion.

Plaintiff also briefly asserts that he "does not have insurance and has received only conservative care for his lumbar and neck issues," including noting his inability to pay for ordered physical therapy or an additional MRI of his lumbar spine.  [Doc. 20 at 12].  Social Security Ruling 96–7p provides that an ALJ "must not draw any inferences about an individual's symptoms . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," such as that an "individual may be unable to afford treatment and may not have access to free or low-cost medical services."  SSR 96–7p, 1996 WL 374186, at *7–8 (July 2, 1996).  The ALJ, however, reviewed Plaintiff's conservative course of treatment for his back pain, including that it was fairly controlled with medication and the lack of any surgery.  Additionally, "there is no evidence that he ever sought treatment offered to indigents or was denied medical treatment due to an inability to pay."  *Moore v. Comm'r of Soc. Sec.*, No. 14-1123, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) (citing *Goff v. Barnhart*, 421 F.3d

785, 793 (8th Cir. 2005) ("However, there is no evidence Goff was ever denied medical treatment due to financial reasons.")).

Next, the ALJ detailed several inconsistencies with Plaintiff's disabling allegations of pain, including his normal sensory examinations by his primary care providers and Dr. Blaine, but complaints of decreased sensation to Dr. Kennedy; observations of Plaintiff favoring his left extremity at one examination and his right extremity at another; and the most recent examination noting Plaintiff's gait was observed without asymmetric limping. [Tr. at 450]. Lastly, the ALJ stated that Plaintiff's treatment records indicate he told a provider that he was fired for falsifying logbooks, which calls into question whether he could continue working, and noted that Dr. Uzzle reported multiple inconsistencies while observing Plaintiff. [*Id.*].

Additionally, the ALJ reviewed the medical record, including the opinions of Dr. Kennedy, Dr. Blaine, and Dr. Baumrucker, and detailed how the opinions were not entitled to controlling weight. Plaintiff does not contest the ALJ's treatment of these opinions or his reasoning for not adopting the assessed limitations involving Plaintiff's need to withdraw from work or lie down. The Court finds that the ALJ appropriately detailed how the opinions were not entitled to great weight and detailed objective medical evidence which supported his findings. *See, e.g.*, *Shular v. Berryhill*, No. 3:17-CV-266-HBG, 2018 WL 3377332, at *4 (E.D. Tenn. July 11, 2018) (finding the ALJ's assignment of little weight to opinion of consultative examiner is supported by substantial evidence as "[t]he ALJ cited to Plaintiff's otherwise normal range of motion"); *Hinkle v. Berryhill*, No. 2:17-CV-54, 2018 WL 2437238, at *5 (E.D. Tenn. May 30, 2018) (holding the ALJ properly assigned little weight to a consultative examiner's opinion, as the ALJ detailed how the opinion was not consistent with the examination or medical record, as well as reviewed Plaintiff's subjective allegations)

17

Ultimately, the ALJ did include significant limitations on Plaintiff's ability to stand or walk, as well as change position, as Plaintiff's RFC limits him to walking for two hours in an eight hour workday, with a need to change positions every twenty to thirty minutes, and limits his ability to bend, twist, and kneel. [Tr. 446]. The Court finds that the ALJ accounted for Plaintiff's severe impairment of degenerative disc disease, and after reviewing the medical opinions and Plaintiff's treatment record, included only the limitations that he found credible. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009). Therefore, Plaintiff's assignments of error do not constitute a basis for remand.

## 2. Need to Reach Overhead

Plaintiff asserts that the ALJ improperly failed to include a limitation on his ability to lift above shoulder-level in the RFC determination. [Doc. 20 at 8]. Plaintiff claims that this limitation is supported by Dr. Kennedy's opinion that he could not "be expected to work with his hands elevated above the level of his shoulders because that would tend to arch his back and make his pain worse." [Tr. 429]. Additionally, Plaintiff contends that the nonexamining state agency physician on his subsequent application, Frank Pennington, M.D., opined that he would be limited in his ability to reach overhead in any direction in both of his upper extremities. [Doc. 20 at 8].[2]

In the disability determination, while reviewing the opinions of the nonexamining state agency consultants on Plaintiff's subsequent application, the ALJ found that the assessed limitations with respect overhead reaching were not consistent with the medical record, as Plaintiff

---

[2] While Plaintiff asserts that Dr. Kennedy opined that he would "have limited upper extremity movement [due] to 'frequent' usage due to neck pain" [Doc. 20 at 8], when asked to assess Plaintiff's manipulative limitations, Dr. Kennedy opined "frequent o[ver]h[ead] reaching with [bilateral upper extremities] due to neck pain" [Tr. 516].

"has demonstrated normal strength in his upper extremities, and his complaints of neck pain have not been consistent throughout the period at issue." [Tr. 451].

As discussed previously, however, the ALJ is only required to include limitations that he finds credible in the RFC determination. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009). Here, the ALJ found that the portion of Dr. Kennedy's opinion regarding "working with his hands elevated above the shoulder level" was consistent with the RFC determination. [Tr. 453]. Therefore, the Court interprets Dr. Kennedy's opinion as stating that Plaintiff was limited to frequent overhead reaching with both upper extremities due to his neck pain, which the ALJ found was consistent with the RFC determination. Further, as a nonexamining state agency physician, Dr. Pennington's opinion was not entitled to controlling weight. 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i). Here, the Court finds that the ALJ appropriately detailed how the assessed limitation on Plaintiff's ability to overhead reach was not supported by the medical record in discounting Dr. Pennington's opinion. 20 C.F.R. §§ 404.1502 and 416.902 (noting opinions from nonexamining sources are weighed based in part on consistency with the record); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

Plaintiff claims that the ALJ failed to consider "the consistent reports of pain in the left shoulder with limited strength after a fall in 2014." [Doc. 20 at 8]. Plaintiff cites to the September 9, 2014 MRI of his cervical spine which indicated "multilevel degenerative disc space narrowing and osteophytic ridging most prominent at C6-C7." [*Id.* at 9]; *see* [Tr. 745].

However, in the disability decision, the ALJ specifically addressed Plaintiff's "emergency treatment for neck pain, and imaging [which] revealed degenerative changes most pronounced at C6-C7." [Tr. 449]. The ALJ also reviewed that at his subsequent visit, Plaintiff demonstrated "normal pain free range of motion of the cervical spine" on April 1, 2016. [*Id.*]; *see* [Tr. 884–91].

Plaintiff exhibited negative impingement and apprehension signs at the shoulders during his consultative examination with Dr. Uzzle on March 17, 2017. [Tr. 944]. Further, the ALJ specifically detailed his reasoning in support of the lack of a limitation on Plaintiff's ability to lift above shoulder level in the RFC determination—that Plaintiff consistently demonstrated normal strength on examination and did not exhibit consistent complaints of neck pain. [Tr. 451].

Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). "Rather, it is the Commissioner's prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work." *Luukkonen v. Comm'r Soc. Sec.*, 653 F. App'x 393, 402 (6th Cir. 2016) (citing 20 C.F.R. § 416.929(c)(1), -(d)(2)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ). Ultimately, the Court finds that the ALJ's RFC determination is supported by substantial evidence, and Plaintiff's assignments of error do not constitute a basis for remand.

### C.  Discretion to Order a Mental Health Consultative Evaluation and Need for Service Animal

Plaintiff contends that the ALJ abused his discretion by failing to order an updated mental health evaluation due to his testimony and use of a service animal. [Doc. 20 at 9]. Plaintiff notes

that his counsel requested that the ALJ order an updated mental health evaluation on May 24, 2017 [Tr. 738], and that "[t]he only assessment of record" was performed by Dr. Nevils "over three years prior to the ALJ's decision." [Doc. 20 at 9]. Plaintiff points to his long history of mental health treatment for depression and anxiety, and he claims that while the ALJ found that his condition improved after being prescribed Pristiq, the ALJ also failed to consider his use of a service animal as a source of his improvement. [*Id.*]. Plaintiff alleges that "[t]he ALJ's failure to consider the need for the service animal [ ] when determining whether adequate information was available to make a determination regarding his mental health limits was error," and "[t]he ALJ should have ordered an updated [consultative examination] to address this significant issue." [*Id.* at 10].

The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 416.917. Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *see Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n.3 (6th Cir. 2009) ("[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status[.]").

Here, the Court finds "that the record contained a considerable amount of evidence pertaining to [Plaintiff's] mental limitations," and thus the ALJ "did not abuse [his] discretion by declining to obtain an additional assessment." *Culp v. Comm'r of Soc. Sec.*, 539 F. App'x 750, 751 (6th Cir. 2013). Although the present case presents an unusual procedural posture, where Plaintiff's case was before the ALJ after a second, subsequent application and the remand order of

this Court, the ALJ extensively reviewed Plaintiff's mental health treatment. As the Court has already detailed, the ALJ reviewed Plaintiff's improvement after taking Pristiq in July of 2013 and subsequent mental status examinations by his primary care providers. Further, the ALJ afforded great weight to both Dr. Nevils' opinion and the opinions of the state agency psychological consultants provided in connection with Plaintiff's subsequent application, who found that Plaintiff did not have a severe mental impairment. [Tr. 451]. In addition, the ALJ did not have a special duty to develop the record because Plaintiff was represented by counsel. *See Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 856 (6th Cir. 1986). Therefore, the Court finds that the ALJ did not err by failing to order an additional psychological consultative examination after the consolidation of his subsequent application and the Court's remand.

Plaintiff also claims that the ALJ failed "to consider the need for a service animal," and that "[t]his case should be remanded to determine the need for the service animal." [Doc. 20 at 10]. The Commissioner responds that the ALJ appropriately considered Plaintiff's testimony that he had a service dog but found that there was "no evidence that the dog received any training as a service animal or was otherwise part of Plaintiff's prescribed treatment." [Doc. 24 at 22].

"A claimant's use of a service dog must be considered by the ALJ when there is evidence of a prescription from a medical provider for the dog." *McGehee v. Berryhill,* 386 F. Supp. 3d 80, 87–88 (D. Mass. 2019); *see, e.g., Cruz v. Comm'r of Soc. Sec. Admin.,* 406 F. Supp. 3d 1337, 1346 (M.D. Fla. 2019) ("While there does not appear to be any Eleventh Circuit authority establishing a standard for incorporating a claimant's need for a service animal in a claimant's RFC assessment, some courts have found that 'the use of a service dog must be medically necessary to be considered in an RFC assessment' . . . Other courts have also found that the ALJ must consider the claimant's use of a service dog when the evidence shows that the service dog was medically

prescribed or recommended.") (quoting *McGehee*, 386 F. Supp. 3d at 87) (other citations omitted).

Plaintiff has failed to point to any evidence in the record establishing that a service animal was medical necessary other than "the statement of need for the service animal in an apartment application signed by his counselor at the time." [Doc. 20 at 10]; *see* [Tr. 734].[3]

In the disability decision, the ALJ noted that Plaintiff testified that he has had a service animal since 2015, but that "the evidence indicates the claimant and his girlfriend bought a puppy for each other as a Christmas present, and the evidence does not indicate that the claimant received a trained service dog." [Tr. 442–43]. The ALJ also discussed Plaintiff's treatment notes involving the puppy, as "[i]n February 2016, the claimant told his therapist he has become very attached to the animal, and he brought [the] puppy to his therapy session." [Tr. 444].

The attached record submitted by the Plaintiff consists of a modification disability verification for his apartment complex, which Plaintiff claims was signed by his treating counselor, and states that he requires a "companion animal." [Tr. 734]. While the Court notes the apparent absence of controlling Sixth Circuit authority on this topic, the *Mcgehee* Court noted that "[a]bsent a prescription, courts are split on whether a letter recommending a service dog from a medical source is sufficient to show that the dog is medically necessary." 386 F. Supp. 3d at 88 (*comparing Payano v. Colvin*, No. 2:15-cv-294-RFB-GWF, 2017 WL 4778593, at *4 (N.D. Nev. Oct. 23, 2017) (finding letter from psychiatrist recommending service dog alone does not support an assessment that a dog is necessary for the plaintiff to work), *with Santos v. Colvin*, No. 3:12-cv-5827-KLS, 2013 WL 5176846, at *5 (W.D. Wash. Sept. 12, 2013) (remanding where a doctor

---

[3] Plaintiff asserts that "[i]t appears the second page was not in the record and has been attached as Exhibit 1," [Doc. 20 at 10], but subsequently failed to include any exhibits to his Memorandum.

provided letter indicating that plaintiff required a service dog)).

Here, the ALJ considered Plaintiff's testimony that he used a service dog in the disability decision, but found that the evidence did not indicate that he received a trained service dog, as well as that his anxiety and depression were not severe impairments. [Tr. 442–43]. Additionally, the Court finds that Plaintiff has failed to establish that a service animal was medically necessary. The referenced letter to Plaintiff's apartment complex that he requires a service animal does not detail that such an animal was medically prescribed or provide an opinion on the impact of a service animal on Plaintiff's ability to work. *See Cordell v. Saul*, No. 3:19-CV-47, 2019 WL 6257994, at *18 (N.D.W. Va. Nov. 4, 2019) ("Generally, a letter from a medical provider that suggests an individual's use of a service dog, without further testimony or documentation of the individual's need and use of the service animal, is insufficient to establish that the service dog is medically necessary."), *report and recommendation adopted sub nom.*, *Cordell v. Comm'r of Soc. Sec.*, 2019 WL 6255498 (N.D.W. Va. Nov. 22, 2019)*; Payano,* 2017 WL 4778593, at *4 (finding a recommendation that the claimant's dog be designated as a service animal "does not support an assessment that the dog is necessary for Plaintiff to work, nor describe how she would need any dog in a work setting" and as such "[a]ny failure to inform the vocational expert of the mere fact of having a properly-designated service dog was harmless error"). Further, Plaintiff fails to point to evidence in the record of the use of a service dog in his treatment notes, or that he ever actually utilized a properly trained service animal.

Accordingly, the Court finds that Plaintiff has failed to establish that a service animal was medically necessary, and thus the ALJ did not err by failing to consider the use of a service animal in the RFC determination.

**D.     Dr. Uzzle's Review of the Medical Record**

Plaintiff additionally claims that the ALJ erred by failing to forward the March 17, 2012 MRI of his lumbar spine to Dr. Uzzle for his review. [Doc. 20 at 11]. Plaintiff contends that Dr. Uzzle only reviewed x-rays, and that the MRI "and its revelation of the L5 disc herniation . . . is at the crux of [Plaintiff's] back pain and radiating pain into his legs," while also revealing C6-C7 narrowing. [*Id.*]. The Commissioner responds that the ALJ specifically detailed why it was not necessary for Dr. Uzzle to review the March 2012 MRI. [Doc. 24 at 23].

In the disability decision, the ALJ noted that Plaintiff requested that the MRI be sent to Dr. Uzzle for his review, but that the request was denied, as the ALJ considered the MRI in making the disability determination, "the examiner had an opportunity to review recent diagnostic imaging," and Dr. Uzzle noted that "his observations were already limited by the claimant's lack of effort during testing and inconsistent behaviors." [Tr. 439]. As the Court has already reviewed, the ALJ detailed that Plaintiff's March 17, 2012 MRI "revealed a focal annular fissure posterolaterally on the right at L5-S1, and a small disc protrusion," further examinations revealed mild to moderate pain, and Plaintiff's primary care providers prescribed non-steroid anti-inflammatory drugs. [Tr. 447–48]; *see* [Tr. 418].

Pursuant to 20 C.F.R. §§ 404.1517 and 416.917, consultative examiners must be provided with "any necessary background information" concerning a claimant's condition. However, the regulation "does not place an imperative on the agency to provide a consultative examiner with a full medical record, but only explains that '[w]e will also give the examiner any necessary background information about your condition.'" *Grant v. Colvin*, No. 3:14-cv-399, 2015 WL 4713662, at *13 (E.D. Tenn. Aug. 7, 2015) (quoting 20 C.F.R. § 404.1517).

Here, Dr. Uzzle noted on March 17, 2017 that "[l]umbrosacral AP and lateral x-rays" were obtained, as well as x-rays of Plaintiff's "thoracic spine AP and lateral views." [Tr. 942]. Dr. Uzzle found this imaging exhibited "mild-to-moderate multiple level degenerative disc changes with spurring at multiple levels," while "[l]umbosacral x-rays show moderate multiple level degenerative disc changes, no signs of fracture or malalignment, and SI joints appear patent." [*Id.*].

Ultimately, the Court finds that the ALJ did not err by failing to provide Dr. Uzzle with Plaintiff's March 17, 2012 MRI, as Plaintiff has failed to differentiate the MRI from more recent diagnostic imaging that revealed his moderate multi-level degenerative disc changes in the lumbar spine. Dr. Uzzle did not state that he was unable to review Plaintiff's medical record, and specifically detailed his review of the diagnostic imaging. *Cf. Goppert v. Berryhill*, No. 3:16-CV-02739, 2018 WL 513435, at *11 (M.D. Tenn. Jan. 23, 2018) ("Yet, the ALJ did not provide any medical records or x-rays to Dr. Robinson to review. Therefore, based upon the Sixth Circuit's analysis in *Brantley*, the Magistrate Judge concludes that under 20 C.F.R. §§ 404.1517 and 416.917 the ALJ was obligated to provide Dr. Robinson with Plaintiff's medical records and x-rays and failure to do so constituted error.") (citing *Brantley v. Comm'r of Soc. Sec.*, 637 F. App'x 888, 894 (6th Cir. 2016)), *report and recommendation adopted by*, 2018 WL 1138533 (M.D. Tenn. Mar. 1, 2018). Importantly, Plaintiff does not argue that the ALJ failed to discuss the records he claims that Dr. Uzzle did not review. Therefore, Plaintiff's contention that Dr. Uzzle improperly failed to review a complete medical record does not constitute a basis for remand.

## VI.   CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [**Doc. 19**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **GRANTED**.  The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge